IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 17, 2005 Session

## CITY OF MORRISTOWN v. REBECCA A. LONG

**Appeal from the Chancery Court for Hamblen County**
**No. 2003-64     Ben K. Wexler, Chancellor**

_____

**No. E2004-01545-COA-R3-CV - FILED MARCH 31, 2005**

_____

The appellant was discharged from her job by the City of Morristown based upon allegations that she participated in the use, possession, sale and distribution of marijuana in violation of the City's policy against illegal drugs in the workplace. She applied for unemployment benefits and her claim was denied. She appealed the denial of benefits and both the Appeals Tribunal and the Board of Review of the Employment Security Division of the Tennessee Department of Labor and Workforce Development ruled that she was eligible for unemployment benefits because the City failed to prove the alleged illegal drug activity. The trial court reversed the decision of the Board of Review. We hold that the trial court exceeded its authority under the applicable standard of review, and therefore, we reverse the judgment of the trial court and remand.

**Tenn. R. App. P. 3 Appeal as of Right ; Judgment of the Chancery Court Reversed; Cause Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which D. MICHAEL SWINEY and PATRICIA COTTRELL, JJ., joined.

P. Richard Talley, Dandridge, Tennessee, for the Appellant, Rebecca A. Long

Paul G. Summers, Attorney General and Reporter, and Warren A. Jasper, Assistant Attorney General, Nashville, Tennessee, for the Appellee, James G. Neely, Commissioner, Tennessee Department of Labor and Workforce Development

Lori L. Jessee, Morristown, Tennessee, for the Appellee, City of Morristown

### OPINION

On or about October 7, 2002, the appellant, Rebecca A. Long, was terminated from her employment with the Tax Office of the appellee City of Morristown (hereinafter "the City") upon charges that she had violated the City's policy regarding illegal drugs in the workplace. This policy, established pursuant to Tenn. Code Ann. §50-9-101, *et seq,* provides that "[i]t is a violation of City

policy for any employee to use, possess, sell, trade, offer to sale [sic], or offer to buy illegal drugs or otherwise engage in the illegal use of drugs on or off the job."

Evidence supporting the City's allegations against Ms. Long was apparently gathered during the course of an investigation with respect to missing City funds. Shortly after she was discharged, Ms. Long submitted a claim for unemployment compensation to the Tennessee Department of Labor and Workforce Development (hereinafter "the Agency"). However, this claim was denied by the Agency pursuant to Tenn. Code Ann. § 50-7-303 upon a finding of work related misconduct. The Agency's decision, dated October 28, 2002, provides in pertinent part as follows:

> CLAIMANT WAS DISCHARGED FROM MOST RECENT WORK FOR VIOLATION OF POLICIES ON INTOXICANTS. THE EMPLOYER HAD ADVISED ALL EMPLOYEES OF THE POLICIES RELATIVE TO INTOXICANTS. CLAIMANT DID SIGN THE DRUG FREE WORKPLACE POLICY. CLAIMANT WAS AWARE THAT VIOLATIONS OF THIS POLICY WOULD RESULT IN DISCIPLINARY ACTION UP TO AND INCLUDING TERMINATION. CLAIMANT'S ACTIONS WERE WITNESSED BY OTHER PERSONNEL.
>
> SINCE THE CLAIMANT WAS AWARE OF THE COMPANY POLICIES ON INTOXICANTS AND VIOLATED SUCH, THE AGENCY FINDS WORK-RELATED MISCONDUCT UNDER TENNESSEE CODE ANNOTATED 50-7-303 AND BENEFITS ARE DENIED.

The referenced Code section, Tenn. Code Ann. § 50-7-303, provides at subsection (a)(2) that unemployment benefits shall be denied upon a finding that the claimant has been discharged from his or her most recent work for work-related misconduct.

Ms. Long appealed the Agency's decision to the Agency's Appeals Tribunal on October 31, 2002. Based upon the following findings and conclusions, the Appeals Tribunal reversed the Agency's decision:

> After carefully considering the testimony and the entire record in the case, the Appeals Tribunal makes the following:
>
> FINDINGS OF FACT: Claimant's most recent employment prior to filing this claim was with the City of Morristown from September 14, 1998, until October 7, 2002, as a revenue officer. The city became aware of a missing deposit. It began searching for the deposit and found other problems with its finances. It turned the matter over to the police. The police questioned the claimant, her co-workers, and her friends at work. Sometime during its investigation, the police discovered that the use of drugs was involved with the people it questioned. Two employees admitted to drug use during the investigation. One admitted to the

-2-

police that she had bought drugs from the claimant and had paid for them at work. One employee admitted to the police to seeing drugs at work and hearing conversations about it, but she denied using drugs herself. These three employees had never told the city about what they had observed at work prior to being asked about the financial problems. They all pointed out that the claimant had used marijuana, sold it at work, arranged to buy it at work, and that her boyfriend used drugs. The police did not question the claimant about drugs. The police reported its findings to the employer. The employer disciplined the other employees in various ways. The employer terminated the claimant without talking to her about the drug issue. It terminated the claimant rather than disciplining her because it was reported that she had drugs on city property and had offered it for sale. The employer has a drug policy. It has adopted the Drug Free Workplace Policy codified at TCA 50-9-100 et seq. The employer also informs its employees that it can terminate an employee for behavior away from work that brings dishonor to themselves or the employer. Since her termination, the claimant has denied any connection with drugs to the employer. The employer asked the claimant to submit to a drug test. The claimant did so. The test was negative for drugs.

CONCLUSIONS OF LAW: The Appeals Tribunal holds the claimant is eligible for benefits. The issue is whether the employer terminated the claimant for misconduct, according to TCA 50-7-303(a)(2). The evidence establishes the employer terminated the employee for violating its drug policy. Although the employer's witnesses have testified the claimant did use drugs and was involved in selling drugs, the claimant's drug test shows she was not using drugs or involved with drugs. Even assuming the employer proved the claimant has used drugs, it has failed to prove the claimant's actions were so different that the other employees involved that she deserved termination, while they received a lesser punishment. Two of them had used drugs, and one testified she paid for it at work. She paid the claimant for the drugs. In other words she was the second party to a drug transaction at work, yet she was not terminated. The other had observed drugs and overheard drug deals, but none of them had ever reported this at all before the issue concerning the lost money surfaced.
Misconduct is an act by an employee that breaches a duty the employee owes the employer. The employer has the burden of proof in this matter. Using drugs at work or being involved with them in violation of the employer's policy is misconduct. The employer has failed to prove the claimant used drugs or was involved with drugs at work or away from work. Even if it had, it has failed to prove the claimant's actions were a breach of duty deserving termination, while the other employees involved did not breach a duty and did not deserve termination.

The City appealed the decision of the Appeals Tribunal to the Agency's Board of Review. After hearing the testimony of witnesses and reviewing other evidence in the case, the Board of

Review determined that the Appeals Tribunal was correct in its findings of fact and application of law and the Tribunal's decision in favor of Ms. Long was affirmed. The Board of Review's decision provides as follows:

FINDINGS OF FACT: The claimant's most recent employment prior to filing this claim for benefits was as a revenue officer for the City of Morristown from September 14, 1998 until October 4, 2002.

The employer discovered that there were two missing deposits "from the office that (the claimant) worked in" totalling approximately $18,000.00 and "turned everything we had over to the Morristown Police Department." During the police investigation, "statements came out concerning the use of drugs." One co-worker employed as a secretary in the City police department's narcotics division reported that the claimant had smoked marijuana a couple of months prior while the two were away from the workplace on a lunch break and that she had given the claimant money at the workplace that the claimant was to use to buy marijuana for her (the co-worker). Another co-worker who worked in the same office with the claimant reported that the claimant had had marijuana at the workplace, used the "city's telephone to arrange transactions" to purchase marijuana, and had large amounts of cash in her purse at the workplace. The claimant denied the co-workers reports and insisted that she did not use marijuana. The claimant complied with the employer's request that she take a drug test and a September 30, 2003 drug test report showed negative results for drugs, including marijuana. The claimant was subsequently discharged effective October 4, 2002 for violation of the employer's "drug free workplace policy." In accordance with that policy, "(I)t is a violation of City policy for any employee to use, possess, sell, trade, offer to sell, or offer to buy illegal drugs or otherwise engage in the illegal use of drugs on or off the job." The policy further indicated that violations "are subject to disciplinary action up to and including termination."

The claimant filed a grievance with her department head and that grievance was denied. She then sought a hearing before the city administrator who upheld her termination. The co-worker working in the same office as the claimant was disciplined by the employer but maintained employment. The other co-worker who worked as a secretary in the narcotics department was suspended without pay for two weeks and then transferred to another department and placed on probation for a period of six months. During the police investigation, the chief of police indicated to that employee that he would "work against her being terminated" and "do what he could to maintain her employment." The city administrator offered that the police chief's approach in obtaining information from that co-worker was "typical of what the police department uses in criminal investigations." The city administrator discussed the matter with the police chief who believed that he had

"felt like had said to (the co-worker) that he would work with her to try for her not to lose her employment."

CONCLUSIONS OF LAW: The Board finds that the claimant was discharged but does not find the evidence sufficient to establish misconduct within the meaning of TCA § 50-7-303(a)(2). The claimant was discharged amid allegations that she violated the employer's "drug-free workplace policy." The claimant has consistently denied those allegations. Two of the co-workers alleging the claimant's conduct provided testimony before the Board. The claimant has speculated that her office co-worker may have provided untruthful statements in the investigation "perhaps because (she) worked within (the claimant's) department." Such motivation to discredit the claimant, particularly given the underlying investigation concerning the missing monies, is not implausible. Taking that possibility into account, other credible evidence presented in this case shows disputed testimony between the claimant and the other co-worker. Information from that other co-worker was obtained using an approach "typical of what the police department uses in criminal investigations." Given all the circumstances, the Board does not find the evidence as presented sufficient to reasonably establish conduct by the claimant in violation of the employer's drug policies.

That finding notwithstanding, however, the Board notes the inequality of disciplinary action applied to the claimant, who was discharged although denying the allegations presented, and the narcotics department secretary, who was suspended although admitting a violation of the employer's drug policy. Given that inequality, the Board finds that it cannot be said that the claimant's conduct, even if as alleged, should warrant a finding of misconduct in this case.

DECISION: The previous decision of the Board of Review that approved this claim is affirmed.

On December 9, 2003, the City filed a petition pursuant to Tenn. Code Ann. §50-7-304(i) in the Chancery Court for Hamblen County for judicial review of the decisions of the Appeals Tribunal and Board of Review. The petition states that review is sought upon the following grounds:

(I). Rights of the City have been prejudiced because the administrative findings, inferences, conclusions and decisions are unsupported by evidence which is both substantial and material in light of the entire record and (ii) the decision of the Agency and its reviewing bodies is arbitrary, capricious, characterized by an abuse of discretion and/or a clearly unwarranted exercise of discretion and is based upon erroneous factual and legal considerations and conclusions.

-5-

By judgment and accompanying memorandum opinion, the trial court reversed the decisions of the Agency Appeals Tribunal and Board of Review and denied Ms. Long her requested unemployment benefits. Thereafter, Ms. Long filed her notice of appeal to this Court.

The sole issue we address is whether, under the applicable standard of review, the trial court erred in reversing the decisions of the Agency's Appeals Tribunal and Board of Review.

Tenn. Code Ann. §50-7-304(i) provides that, upon proper application, the Chancery Court may review an Agency decision under the following standard:

> (2) The chancellor may affirm the decision of the board or the chancellor may reverse, remand or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
> > (A) In violation of constitutional or statutory provisions;
> > (B) In excess of the statutory authority of the agency;
> > (C) Made upon unlawful procedure;
> > (D) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> > (E) Unsupported by evidence which is both substantial and material in the light of the record.
> (3) In determining the substantiality of evidence, the chancellor shall take into account whatever in the record fairly detracts from its weight, *but the chancellor shall not substitute the chancellor's judgment for that of the board of review as to the weight of the evidence on questions of fact.* No decision of the board shall be reversed, remanded or modified by the chancellor unless for errors which affect the merits of the final decision of the board. Such petition for judicial review shall be heard by the chancellor either at term time or vacation as a matter of right, any other statute of this state to the contrary notwithstanding. (Emphasis added)

In accord with this statute, the Tennessee Supreme Court has indicated that an agency's factual determinations should be upheld by a reviewing court if supported by "substantial and material evidence" defined as "such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." S*outhern Ry. Co. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984).

We base our analysis of the trial court's decision in this case upon recitations set forth in its memorandum opinion. The opinion re-states the previously noted grounds which the City asserted in support of its application for judicial review and continues as follows:

> 15. Long was terminated by the City in October 2002, [for] violation of the City's policies relating to illegal drugs. Evidence of drug involvement by Long

was discovered by the City during an investigation of missing funds from the City tax office where Long was employed. The City presented testimony before the agency and its reviewing bodies, of three coworkers of Long, who testified that Long used marijuana during work hours, sold marijuana to at least one coworker, collected payment for illegal substances during working hours at her place of employment with the City, and possessed marijuana during working hours at her place of employment. This testimony was presented live, and by written statement established that Long violated the City illegal drug policies by possessing marijuana, using marijuana, offering marijuana for sale to other City employees, and distributing marijuana to other City employees. She was terminated on this basis in October 2002.

16. Long denied all the allegations of her coworkers and relied upon a negative drug test as her only defense to the above allegations. She presented no witnesses and presented no proof other than her personal speculation that the coworkers that testified fabricated all this marijuana evidence to the Morristown Police during the missing money investigation. One of the coworkers that testified was not employed at the tax office and had no connection to any pending investigation of money missing from the tax office, and there had been several days that had elapsed between the administration of the drug test and the time the alleged drug use by Long as testified to by her coworker. Usually marijuana only stays in the blood system of a marijuana user some 20 to 25 days. The evidence by the coworker was she used marijuana in late August and the drug test was in late September the negative drug test did not refute the allegations of drug possession, drug sale and drug distribution to other city employees.

17. The City asserts that the weight of the evidence establishes that the City terminated Long for misconduct connected with work. It is the City's position that the decision(s) of the Appeals Tribunal and the Board of Review of the Agency are against the weight of substantial and material evidence establishing misconduct connected with work by Long and such decision(s) are not supported by substantial and material evidence in light of the entire record.

18. In addition, the Agency's legal and factual analysis is in error as it relates to considerations of the punishment of coworkers who provided testimony of Long's drug involvement. Respectfully, the City asserts that disciplinary action taken by it with respect to employees other than Long was not germane to the issue before the Agency and its reviewing bodies in determining whether Long was terminated for misconduct connected with work. Such considerations were not relevant to the determination of the issues before the Agency and its reviewing bodies and/or were given inordinate weight in reaching this decision and thus constitute and contributed to a decision which is arbitrary, capricious,

characterized by abuse of discretion and/or a clearly unwarranted exercise of discretion.

19. The Board of Review, in its conclusions of law states as follows: "Given all the circumstances the Board does not find the evidence as presented sufficient to reasonably establish conduct by the claimant in violation of the employees [sic] drug policies."

"That finding notwithstanding, however, the Board notes the inequality of disciplinary action applied to the claimant who was discharged although denying the allegation presented, and the narcotics department secretary, who was suspended although admitting a violation of the employer's drug policy. Given that inequity, the Board finds that it cannot be said that the claimants [sic] conduct, even if as alleged, should warrant a finding of misconduct in this case." It is alleged in this case and there is some evidence that Long used marijuana used marijuana during working hours, sold marijuana to a coworker, received payment for marijuana during working hours at her place of employment and possessed marijuana during working hours at their place of employment, all of the above is in violation of the City's illegal drug policies.

The previous decision of the Board of Review that approved this claim for benefits pursuant to T.C.A. Sect. 50-7-303 is denied.

Upon our review of the decisions of the Agency's Appeals Tribunal and Board of Review, the judgment of the trial court and the record as a whole, it is our determination that the trial court erred in reversing the decisions of the Agency's Appeal Tribunal and Board of Review.

The trial court's decision in this case was based solely upon the record of the proceedings before the Appeals Tribunal and the Board of Review. Evidence in the proceedings before the Agency's reviewing bodies consisted of witness testimony and the results of a blood test for the use of marijuana. Three of Ms. Long's co-workers -Sonya Bunch, Kim Humbard and Glenda Pike- gave evidence that they had personally witnessed Ms. Long violating the City's policy against illegal drugs.

Sonya Bunch was a former employee of the cashier's office of the City's Finance Department. She did not appear to testify before either the Appeals Tribunal or the Board of Review. At the outset of the hearing before the Appeals Tribunal, Ms. Long's attorney raised a hearsay objection to a written statement by Ms. Bunch which alleged that Ms. Long had been to her house to buy marijuana and that Ms. Long used marijuana in her presence. The hearing officer sustained this objection, noting, however, "We do accept hearsay in these cases, but it goes to the weight of the document, okay?"

Kim Humbard testified that Ms. Long smoked marijuana in Ms. Humbard's car while the two were on lunch break from work. Ms. Humbard also testified that she had paid Ms. Long for marijuana at work and used marijuana with Ms. Long away from work. At the time these events allegedly took place, Ms. Humbard was employed as a secretary in the narcotics division of the City's police department.

Glenda Pike, who worked with Ms. Long in the City tax office, testified that Ms. Long had marijuana in her possession at work and that Ms. Long showed her a bag of marijuana while at work. Ms. Pike further testified that she herself had not used drugs with Ms. Long and had not used any drugs in almost ten years, stating "I tried when, I tried marijuana when I was 19. It almost killed me and I haven't tried it since."

In her testimony before the Appeals Tribunal and the Board of Review, Ms. Long denied that she ever violated the City's drug policy and stated that the allegations of her three co-workers to the contrary were untrue. Ms. Bunch's absence from the hearings before both of these reviewing bodies precluded any cross-examination regarding her written statement and the Agency's reviewing bodies were denied the opportunity to observe her demeanor as a witness. However, Ms. Humbard, Ms. Pike and Ms. Long all appeared before the Appeals Tribunal and the Board of Review and their demeanor under oath was readily observable. Based upon such observations and the record as a whole, the testimony of the witnesses against Ms. Long was assessed to be not credible. We have previously noted that when resolution of an issue depends upon witness credibility, the fact finder who has the opportunity to observe the manner and demeanor of the witness while testifying is in a far better position than the reviewing court to decide such issue. *Cappello v. Albert*, C/A No. M2000-02104-COA-R3-CV, 2001 WL 1141220, 2001 Tenn. App. LEXIS 721 at *18 (Tenn. Ct. App. M.S., filed September 27, 2001). We find no basis for concluding that the decision to accept as true Ms. Long's testimony in denial of the allegations of the witnesses against her "was arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." We further deem Ms. Long's testimony in her own behalf denying the charges against her to be "substantial and material evidence" as defined by the Court in *Southern Ry. Co. v. Board of Equalization*, 682 S.W.2d 196,199 (Tenn. 1984). We also note the Board of Review's acknowledgment of the possibility that Ms. Long's "office co-worker", apparently Ms. Pike, had motivation to discredit Ms. Long given the pending investigation regarding funds missing from their department. Additionally, Ms. Long's testimony implies that, although Ms. Humbard was not employed in Ms. Long's department, she might have been motivated to give false testimony by a general fear of losing her job:

> Well the whole time me and Kim [Humbard] were friends we worked together, we went to lunch together, she was always worried about losing her job, she could never lose her job. And it didn't have anything to do with drugs or anything like that. She just constantly made comments, "I can't lose my job, I've got two kids I've got to take care of."

In addition to its assessment of the testimony of witnesses, the Agency's decision on review shows that it considered the fact that Ms. Long submitted to a blood test for marijuana on September 27, 2002. Ms. Long testified that she took this test the day after she was requested to do so by assistant city administrator, Jack Hennerly. The results of the test were negative, although Ms. Humbard had testified that Ms. Long had used marijuana as recently as late August. The trial court apparently discounts the negative test results stating in its memorandum opinion that "[u]sually marijuana only stays in the blood system of a marijuana user some 20 to 25 days." We find no evidence in the record to support this finding. In any event, the fact that an individual who is alleged to have used marijuana on multiple and relatively recent occasions, promptly and willingly submits to a requested blood test for marijuana which shows no trace of marijuana in her blood stream constitutes circumstantial evidence tending to disprove such allegations. We conclude that this evidence was substantial and material and was properly considered by the reviewing bodies of the Agency in support of their decisions in favor of Ms. Long.

As a final matter, we address the assertion of the trial court and the City that the Agency reviewing bodies inappropriately considered the fact that unequal disciplinary action was taken against Ms. Long and her co-workers. As stated by the trial court in its judgment:

> In addition, the Agency's legal and factual analysis is in error as it relates to considerations of the punishment of coworkers who provided testimony of Long's drug involvement. Respectfully, the City asserts that disciplinary action taken by it with respect to employees other than Long was not germane to the issue before the Agency and its reviewing bodies in determining whether Long was terminated for misconduct connected with work. Such considerations were not relevant to the determination of the issues before the Agency and its reviewing bodies and/or were given inordinate weight in reaching this decision and thus constitute and contributed to a decision which is arbitrary, capricious, characterized by abuse of discretion and/or a clearly unwarranted exercise of discretion.

While we do not necessarily disagree that the disciplinary actions taken by the City with respect to other employees is not relevant to the determination of whether Ms. Long violated the City's drug policy[1], we do not agree that this factor carried an inordinate amount of weight in the Agency's decision. The decisions of both reviewing bodies indicate that the initial decision reached was that the City had failed to prove that Ms. Long violated the City's drug policy. The Appeals Tribunal states in its decision, "The employer has failed to prove the claimant used drugs or was involved with drugs at work or away from work. Even if it had, it has failed to prove the claimant's actions were a breach of duty deserving termination, while the other employees involved did not breach a duty and did not deserve termination." The words "*even if it had*" refer to a hypothetical situation that did not exist in light of the primary finding that the City did *not* prove its case.

---

[1] The question before the Agency was whether Ms. Long's employment was terminated "for" (meaning 'because of' or 'due to') misconduct. To the extent the City's treatment of other employees who violated the same policy casts doubt upon its proffered reason for this employee's discharge, it is relevant.

Likewise, while the Board of Review alludes to disparate treatment of Ms. Long, the Board's primary finding is that the City did not meet its burden attempting to prove the charges against Ms. Long with respect to illegal drugs. As the Board states in its decision:

> Given all the circumstances, the Board does not find the evidence sufficient to reasonably establish conduct by the claimant in violation of the employer's drug policies.

We are compelled to the conclusion that the trial court "substituted its judgment for that of the board of review as to the weight of the evidence on questions of fact" in this case. In so doing, the trial court exceeded its authority under Tenn. Code Ann. §50-7-304(i). We further disagree that the decisions of the Appeals Tribunal and the Board of Review were either "[a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion" or were "[u]nsupported by evidence which is both substantial and material in the light of the record." Accordingly, the judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion. Costs of appeal are adjudged against the City of Morristown.

_____
SHARON G. LEE, JUDGE